UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 22-CR-0086 (PJS/ECW) |
| Plaintiff, | |
| v. | ORDER |
| MANUEL DENIS MARTINEZ and GABRIEL EDUARDO LEMOINE, | |
| Defendants. | |

Thomas Hollenhorst, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Jennifer Rose Congdon, CONGDON LAW, PLLC, for defendant Martinez.

Catherine L. Turner, for defendant Lemoine.

This matter is before the Court on defendants' objections to the November 16, 2022 Report and Recommendation ("R&R") of Magistrate Judge Becky Thorson. Judge Thorson recommends denying the defendants' motions to suppress evidence and for hearings pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). The Court has conducted a de novo review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Based on that review, the Court overrules the defendants' objections and adopts Judge Thorson's thorough R&R.

Only one matter merits comment. The government argues that the defendants' objections merely rehash the arguments that they made before Judge Thorson, *see* Gov't

Resp. to Obj.'s 2, ECF No. 96, but that is not entirely true. Specifically, in briefing his Motion to Suppress Evidence Obtained as a Result of an Ionscan [ECF No. 44] before Judge Thorson, defendant Lemoine argued only that he had a reasonable expectation of privacy in the exteriors of two rented storage units, and that law enforcement infringed upon that expectation of privacy when an investigator rubbed drug detecting "IonScan" swabs over the door handles and padlocks of the units without a warrant. *See* Mem. Supp. Mot. Suppress Evid. Obtained as Result of Ion Scan 4 5, ECF No. 83. Judge Thorson rightly determined that Lemoine did not have a reasonable expectation of privacy in the exteriors of the storage units and thus that the swabs were not unlawful searches under *Katz v. United States*, 389 U.S. 347 (1967) because those exteriors were in a common area that was accessible to management and other renters and to which staff had provided access to law enforcement officers. *See* R&R 22 25, ECF No. 92.

In his objection to the R&R, Lemoine now argues (for the first time) that law enforcement officers physically trespassed upon his property when they swabbed the door handles and padlocks. Thus, argues Lemoine, law enforcement officers conducted searches under *United States v. Jones*, 565 U.S. 400 (2012), which held that the placement of a GPS tracker on a vehicle was a search for purposes of the Fourth Amendment

because "[t]he Government physically occupied private property for the purpose of obtaining information."

As noted, Lemoine did not raise this argument before Judge Thorson, and thus he is precluded from raising it now. *See Ridenour v. Boehringer Ingelheim Pharms., Inc.*, 679 F.3d 1062, 1067 (8th Cir. 2012) ("Just as parties cannot present arguments to the appellate court that they did not raise before the district court, parties must take before the magistrate, not only their best shot but all of their shots.") (cleaned up). But even if Lemoine had preserved this argument, the Court would almost certainly reject it.

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. As the Supreme Court recounted in *Jones*, Fourth Amendment jurisprudence initially "was tied to common law trespass, at least until the latter half of the 20th century," when the Court decided in *Katz* that a Fourth Amendment "violation occurs when government officers violate a person's 'reasonable expectation of privacy.'" *Jones*, 565 U.S. at 405 06 (quoting *Katz*, 389 U.S. at 360). In *Jones*, the Supreme Court emphasized that the Fourth Amendment continues to embody "a particular concern for government trespass upon the areas ('persons, houses, papers, and effects') it enumerates," and that "*Katz* did not narrow the Fourth Amendment's scope." 565 U.S. at 406 08. At the same time, *Jones* did not

convert all government trespasses into searches; rather, as *Jones* made clear, "[t]he Fourth Amendment protects against trespassory searches only with regard to those items ('persons, houses, papers, and effects') that it enumerates." *Id.* at 411 n.8.

The Court assumes, for the sake of argument, that the handles on the doors to Lemoine's storage units and the padlocks attached to those doors are *someone's* "effects" for purposes of the Fourth Amendment. *See Altman v. City of High Point, N.C.*, 330 F.3d 194, 201 (4th Cir. 2003) (holding that "effects" in the Fourth Amendment "refer[s] only to personal property, and particularly to goods or moveables"). The problem for Lemoine is that the door handles and padlocks are likely not *his* "effects."

For purposes of the Fourth Amendment, "to prove a claim of trespass, one must have possession of the property in question and the ability to exclude others from entrance onto or interference with that property." *United States v. Sweeney*, 821 F.3d 893, 900 (7th Cir. 2016). Because Lemoine did not make his trespass argument before Judge Thorson, the parties did not create the evidentiary record that the Court would need to definitively address that argument. But it seems highly unlikely that, at least as to the door handles, Lemoine had "possession of the property" or "the ability to exclude others from . . . interference with that property." *Id.*

If Lemoine's storage facilities were like most storage facilities, the facilities, not Lemoine, had these rights with respect to the door handles. While Lemoine would have

had a right to *use* the units' door handles, he almost certainly did not have the right to remove them, or paint over them, or discard them, or sell them to someone else, or forbid the owners of the storage facilities from replacing or repainting them.  The door handles were no more Lemoine's personal property than his seat on an airplane or his table at a restaurant.

The padlocks are a closer question.  There is some indication in the record that the padlocks on the storage units were provided by the renters.  *See* Mots. Hr'g. Tr. 61:25 62:1, 64:15 17, 96:23 97:12, ECF No. 78.  But there is also some indication that the padlocks were provided by the storage facility.  *See id.* at 97:1 4.  Again, this is the type of problem that arises when an argument is not made before the magistrate judge and thus the evidentiary record needed to resolve the argument is not created.

There is another problem:  Lemoine barely mentions the padlocks in his objection.  He instead focuses on the door handles (which he characterizes as "exterior appendage[s] of the private storage unit[s]"), mentions the padlocks only once, and never suggests that the padlocks were his personal property.  *See* Def.'s Obj. to R&R 5, ECF No. 94.  Lemoine has thus double forfeited his trespass argument with respect to the padlocks   first by not making the argument before Judge Thorson and then by not making the argument in his objection.

In any event, even if Lemoine had preserved the argument, and even if the padlocks were owned by Lemoine, and even if the "search" of those padlocks was unlawful, the Court would still not suppress any evidence. Because law enforcement officers almost certainly did not violate any of Lemoine's rights in swabbing the door handles, the independent source doctrine would allow introduction of the evidence seized from the storage units even if law enforcement officers did violate Lemoine's rights when they swabbed the padlocks.

Under the independent source doctrine, evidence obtained pursuant to a warrant that was issued following an illegal search will not be suppressed (1) if law enforcement would "have applied for the warrant had they not acquired the tainted information" uncovered by the illegal search and (2) if "the application affidavits support probable cause after the tainted information has been redacted from them." *United States v. Swope*, 542 F.3d 609, 614 (8th Cir. 2008). Those criteria are easily met here. Had law enforcement swabbed just the door handles and not the padlocks, they would have lawfully obtained evidence that the storage units had been used to store illegal drugs, and they undoubtedly would have sought warrants to search those units. And if all mention of the swabs of the padlocks had been omitted from the search warrant applications, the affidavits would still have comfortably established probable cause.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, the Court OVERRULES Lemoine's objection [ECF No. 94] and Martinez's objection [ECF No. 95] and ADOPTS the R&R [ECF No. 92].  IT IS HEREBY ORDERED THAT:

1. Defendant Lemoine's Motion to Suppress Evidence Obtained as a Result of an Ionscan [ECF No. 44] is DENIED IN PART AS MOOT as it relates to the ion swab of the Burnsville apartment door handle, and otherwise DENIED.

2. Defendant Lemoine's Motion to Suppress Evidence Obtained as a Result of a Tracking Device [ECF No. 45] is DENIED.

3. Defendant Lemoine's Motion for *Franks* Hearing [ECF No. 46] is DENIED.

4. Defendant Lemoine's Motion to Suppress Evidence Obtained as a Result of Searches Pursuant to Warrant [ECF No. 47] is DENIED

5. Defendant Martinez's Motion for Hearing Pursuant to *Franks v. Delaware* [ECF No. 53] is DENIED.

6. Defendant Martinez's Motion to Suppress Evidence Obtained as a Result of an Ionscan [ECF No. 56] is DENIED IN PART AS MOOT as it relates to the ion swab of the Burnsville apartment door handle, and otherwise DENIED.

7. Defendant Martinez's Motion to Suppress Evidence Obtained after Execution of Search Warrants [ECF No. 60] is DENIED.

8. Defendant Martinez's Motion for Suppression of Evidence Obtained in Violation of the Fourth Amendment of the United States Constitution [ECF No. 61] is DENIED.

Dated: December 30, 2022

                                       Patrick J. Schiltz, Chief Judge
                                       United States District Court